MONCURB, P.,
after stating the case, proceeded:
The question we have to decide on this appeal is, which of the contesting claimants are entitled to priority, the senior or the junior execution creditors.
In the first place, I think a court of equity has jurisdiction of the case. The controversy might, no doubt, have been raised and decided in the suggestion proceeding, upon a petition filed by the senior execution creditors, even after the order of the second day of July, 1866, was made. But the subject can as well, if not better, be disposed of in a chancery proceeding, such as was instituted in this case, making all persons concerned parties to the suit, and having the rights of all adjusted and determined. The cases of Erskine v. Staley, 12 Leigh 406, and Moore, &c. v. Holt, 10 Graft. 284, afford ample authority, if any were wanting, of the jurisdiction of equity in such a case. But the jurisdiction was admitted by the counsel for the appellants, or one of them at least, in the course of the argument.
I am also of opinion, that there is no good ground of objection to the form of the bill which is substantially sufficient, and that the sheriff was not a necessary party; though he might have been made a defendant, and it might have been prudent to have made him such. The decree appealed from is merely interlocutory, and he may be made a party, if necessary, after the cause is remanded. The sheriff seems not to have been a party in Brskine v. Staley; nor does it appear that the receiver who held the *fund which was in controversy in Moore v. Holt was a party in that case.
Both of the contestants claim a lien upon the fund in controversy under the same law, to wit, section 3 of chapter 188 of the Code. Without the right which 'that law gives, neither of them have any claim to the fund. It was a chose in action of the common debtor, which could not be levied on under chapter 187 of the Code. Before the Code of 1849 such an interest could have been reached only by suing out a ca. sa. and compelling the debtor to take the oath of insolvency. But by the second section of chapter 188 of that Code the writ of ca. sa. was abolished, (with some exceptions not affecting this case,) and the next succeeding section provided what was designed, in part at least, as a substitute for the remedy which had been afforded by the abolished writ. That section is in these words:
“I 3. Bvery writ of fieri facias hereafter issued shall, in addition to the effect which it has under chapter 187, be a lien from the time that it is delivered to a sheriff or other officer to be executed, upon all the personal estate of, or to which the judgment debtor is possessed or entitled, (although not levied on, nor capable of being'levied on, under that chapter,) except in the case of a husband or parent, such things as are exempt from distress or levy by the 33d and 34th sections of chapter 49, and except that as against an assignee of any such estate for valuable consideration, or a. person making a payment to the judgment debtor, the lien by virtue of this section shall be valid only from the time that he has notice thereof. This section shall not impair a lien acquired by an execution creditor under chapter 187.”
It seems to me that there ought to be no doubt as to the true meaning of the Legislature in the section just quoted. It expressly declares that every fieri facias thereafter ^issued shall- be a lien, from the time that it is delivered to the officer to be executed, upon all the personal estate, &c., except, &c. Now here is an express legal lien, given to the execution creditor, upon all the debtor’s personal estate; and if there had been no exception expressed in the law, this lien would have been good even against an assignee for value and without notice. It follows that the lien is good against everybody who cannot bring himself within one of the exceptions enumerated in the section; that is, he must show: 1. That he is a husband or parent, and that the things on which the lien is claimed are such as are exempt from distress or levy by the 33d and 34th sections of chapter 49; or, 2. That he is an assignee of the subject for valuable consideration, and without notice; or, 3. If the subject on which the lien is claimed be a debt due by him to the defendant in the execution, that he paid the debt without notice of the lien; or, 4. That he has himself acquired a lien on the subject as an execution creditor, under chapter 187. These are all the exceptions enumerated in the statute, and it is out of the power and province of the court to supply any other. If none had been there, the court could have made none; and it can no more add to what are there. Be the law wise or unwise, it is enough for us to say, ita lex scripta est.
The appellants do not bring themselves j within any of the exceptions, and are en *596 titled only to the lien which the third section gives them. But as the lien of the appellees, given by the same section, is prior in time, so it must be prior in right. It is not pretended that there was any fraud, or collusion, or even negligence, on the part of the appellees. It is not pretended that the whole amount of their judgment is not justly due. Immediately after obtaining their judgment they sued out execution thereon, which was returned “no effects;” and in little more than a month after the date of that execution, and while it was *in full force in the hands of the sergeant, the appellants, who in the meantime had obtained their judgment, sued out execution thereon, and on the same day filed their suggestion. They were more fortunate, it seems, than the appel-lees in finding out a debt due to the common debtor, and promptly proceeded to subject it to the lien of their execution. So far as their debtor had property in it when the operation of their lien commenced, they had a right to subject it. But it was subject at that time to the prior lien of the appellees; and to the extent to which it would be required for the satisfaction of that prior lien, the property did not belong to the common debtor, and was not subject to the junior lien of the appellants.
The appellants, aware of the importance, if not necessity, of bringing themselves within one of the exceptions enumerated in the third'section, made an effort to show that they are assignees for valuable consideration, and without notice. But the effort, though ingenious, was unsuccessful. Such an assignment could only be made by the common debtor, and there was no semblance of any assignment by him. The garnishees had no right to make an assignment for him, and they did not undertake to do so. They only consented that the court, in the enforcement of tlie appellants’ supposed execution lien, should put the bond in the hands of its officer for collection, in order that the proceeds, when collected, might be applied, first to the payment of their claim, and then to the part payment of the appellants’ judgment, which was at that time supposed to be the only other lien upon the fund.
But the appellants insist that, by their proceedings on the suggestion, they acquired a specific lien on the fund in controversy, which entitles them to a preference over what they call the general lien of the appellees.
Now this view is wholly inconsistent with the purpose and effect of the proceedings on the suggestion. Those *proceedings do not give any lien at all, general or specific. They are merely a means provided by law for the enforcement of a legal lien which already exists. “On a suggestion by the judgment creditor, that by reason of the lien of his writ of fieri facias there is a liability on any person other than the judgment debtor,” &c. These are the words of the 11th section of chapter 188, which gives the remedy. The only liabilitjr then which ’there is to be enforced by this proceeding is, a liability arising under section three of the same chapter. And as in this case, there was a prior liability by reason of the lien of the appellees’ writ of fieri facias, the proceedings by suggestion instituted by the appellants could only be in subordination to that prior lien.
These proceedings by suggestion are likened by the counsel of the appellants, in their argument, to the case where two writs of fieri facias, in favor of several plaintiffs against the same defendant, come to the hands of different officers at different times for execution, and the one last coming to hand is first served; in which case, it seems, the service is good, upon the principle declared by Eord EUenborough in Payne v. Drewe, 4 East. 523, 545, “that where there are several authorities, equally competent to bind the goods of the party when executed by the proper officer, that they shall be considered as effectually and for all purposes bound by the authority which first actually attaches upon them in point of execution, and under which an execution shall have been first executed.” And in support of this view several other cases were cited, viz.: Tabb v. Harris, 4 Bibb’s R. 29; Kilby v. Haggin, 3 J. J. Mar. R. 208; Million v. Commonwealth, 1 B. Mon. R. 310; Bourne v. Hacher, 11 Id. 23. The counsel argue that a suggestion under the statute in regard to a chose in action is analogous to the levy of an execution on tangible goods, and ought to have the same effect in giving priority *to a junior over a senior execution. But the analogy does not hold good. The principle announced in Payne v. Drewe, so far as it applies to a writ of fieri facias, depends entirely upon the peculiar nature of the lien of that writ as it existed at common law or under the statute of 29 Charles 2, ch. 3, | 16. Such lien was conditional only, and if not consummated by an actual levy before the return day of the writ, it altogether ceased to exist. It was so imperfect without such levy that a creditor might withdraw his execution against his principal debtor from the hands of the officers without impairing the liability of a surety for the debt. Humphrey v. Hitt, 6 Gratt. 509, and the cases therein cited. It was a mere result of the capacity to levy the execution. This lien is very different from that which is given by section 3 of chapter 188 of the Code. That is an express legal lien, not conditional, but absolute; not limited to the time during which the execution” has to run, but continuing until the right of the judgment creditor to levy a new execution on his judgment ceases, or is suspended by a forthcoming bond being given and forfeited, or by a supersedeas or other legal process.
It is in its nature more like the lien for which, in part, it was intended as a substitute, and which a creditor formerly acquired when his debtor took the oath of insolvency. All the estate of the debtor, whether *597 named in his schedule or not, or wherever situate, was vested by law in the sheriff, for the benefit of the creditor; and this title was good, even against an assignee for value and without notice. The lien given by the 3d section of chapter 188 extends only to personal estate, (the judgment being a lien from its date on all the real estate of the debtor under chapter 186,) is subject to certain exceptions engrafted upon it to avoid inconveniences which would otherwise have resulted from the lien. But to that extent, *and subject to those exceptions, it is as perfect and operative during its existence as was the lien to which it was, in part, a substitute.
The counsel for the appellants refer to the case of Foreman v. Foyd, &c., 2 Feigh 284, as tending to sustain their view, but X do not think it can have that effect. In that case several creditors had recovered judgments against JST, and sued out writs of ca sa, upon which he was taken and charged in execution; then F recovered judgment against the same debtor, and sued out an elegit, on which his lands were extended, and a moiety delivered to F; and then the debtor was regularly discharged from custody under the writs of ca sa as an insolvent debtor, putting in his schedule the whole of the lands which had been extended under F’s elegit. It was held, that the liens of the writs of ca sa executed, given by the statute 1 Rev. Code of 1819, ch. T34, | 10, did not overreach and avoid the extent under F’s elegit. The question had been differently decided in Jackson v. Heiskell, 1 Feigh 257, which was heard, on full and able argument by Messrs. Feigh and Johnson on opposite sides, before a court of three judges, consisting of Cabell, Green and Carr, whose decision was unanimous. Af-terwards, the question was reconsidered in a full court, on the same argument, and decided otherwise in Foreman v. Foyd, &c., as before stated. Judge Cabell changed his opinion, and concurred with Judges Brooke and Coalter in deciding that case. Judges Green and Carr adhered to their former opinions. Judge Carr, in re-affirming his opinion, made these remarks, which are appropriate to the present occasion: ‘ ‘The law, however harsh, however unwise, is, to my understanding, expressed in terms too plain to be changed by construction, or judicial action in any form.” I do not mean to say that, in my opinion, the question was not correctly decided in Foreman v. Loyd, &c.; and at all ^events that case settled the law. But certainly the question decided in that case (as to the true 'construction of the 10th section of chapter 134 of the Code of 1819) was very different from the one involved in this, and that case can, therefore, afford no support to the view of the appellants.
I think the case of Puryear v. Taylor, 12 Graft. 401, is decisive of this case; and I would have considered it as scarcely necessary to do more than refer to it to sustain the decree of the court below, but for the fact that the correctness of that decision was assailed in the argument of the learned counsel for the appellants. In that case it was held by all the judges present, (Allen, P., alone being absent,) first, that a fieri facias is a lien from the time it goes into the hands of the officer to be executed, upon all the personal estate of the debtor, including debts due to him, with the exception stated in the statute; and this lien continues after the return day of the execution; and only ceases when the right to levy the execution, or to levy a new execution upon the judgment, ceases or is suspended by a forthcoming bond being given and forfeited, or by a supersedeas or other legal process. See Code ch. 188, §§ 3 and 4. And, secondly, that the lien of a fieri facias of prior date has priority over an attachment of subsequent date. The counsel for the appellants seem to admit the correctness of the first branch of this decision, that is as to the continuing nature of this lien of the fieri facias after the return day; and at all events admit that that question was fully argued by counsel and considered by the court in the case, and therefore that the decision, to that extent, ought to be regarded as a binding authority. But they insist, that the question secondly decided, to wit, as to the priority of the lien of a fi. fa. of prior date over an attachment of subsequent date, received little or no notice in the argument of counsel, or in the opinion of Judge Samuels, which was concurred in by the rest of the court; *that it was erroneously decided; and that the decision, therefore, ought not to affect this case. The question was expressly noticed, both in the argument of the case and in the opinion which was delivered. The argument, I suppose, was not very fully reported; but Mr. Patton, for the appellant, is reported to have said on this question: “There is certainly no reason, in justice or sound policy, why the lien of an attachment should be preferred to the lien of an execution. The attaching creditor is not an assignee for value. There are good reasons why such an assignee, without notice, should be protected; and the act protects him. And indeed the act expressly protects all those who have any right to protection. The attaching creditor has none.” There is no express notice of this question in the reported argument of Messrs. Rhodes & Macfarland for the appellee; but from their reference to the case of Payne v. Drewe, I would infer that the3 did, in fact, notice it. We cannot suppose that they overlooked the question, though they may have considered that there was no good ground for contesting it, especially if they should be wrong in their view that the new lien given by the statute to the fi. fa. was not “a continuing, indefinite lien. ” In the opinion delivered by Judge Samuels, the conflicting liens of the fieri facias and attachment are compared, and preference accorded to the former. “These liens,” says the Judge, “are both given by statute, and are merely legal. It is perfectly obvious that Puryear’s lien, being first in *598 point of time, must take the precedence of Taylor’s.” I think that the question was not only argued and considered in that case, but that the decision is correct, as well upon that question as upon the other. In the case of Evans’ trustee v. Greenhow, &c., IS Gratt. 153, in which the court again had occasion to consider the subject of this execution lien, all the judges were present, including the president, and all concurred in the opinion therein delivered.
^Considering it, then, as res adju-dicata, and rightly so, that this execution lien is a legal lien which continues after the return day of the execution, and has priority over an attachment subsequently levied, it seems to follow, as a necessary consequence, that it has priority over a subsequent execution lien under the same law, even though there has been a proceeding by suggestion under the junior sooner than under the senior execution.
I have examined the cases cited by the counsel for the appellants from the English reports, in regard to the statutes of Victoria subjecting choses in action to liability under execution and providing means for enforcing such liability; but I do not think they have any material bearing upon this case, involving as they do the construction of laws wholly different in their terms from that we now have under consideration. Those cases are Watts & Wife v. Porter, 77 Eng. C. R. R. 743; Holmes v. Tutton, 85 Id. 65; Hirsh v. Coates, 86 Id. 757; Turner v. Jones, 1 Hurlst. & Norm. R. 878.
The counsel also referred us to several articles published in the “Quarterly Raw Journal” for 1857 and 1858, in regard to the chapters of the Code concerning executions and the decision of this court in Puryear v. Taylor. One of these articles is attributed, and no doubt correctly, to one of the revis-ors, the late lamented Mr. Patton, and as might well be expected from the great learning and ability of that distinguished gentleman, and from his active participation in framing the Code, his article sheds much light on the subject. It is to be found in the “Quarterly Raw Journal” for 1858, pp. 1-14.
In conclusion, it may not be out of place to remark, that while the law we have been construing has been the subject of violent attack and of much conflict of opinion, it does not devolve on us to vindicate its wisdom and policy, but only to construe it and give it effect. It may be said, ^however, that when in 1849 the revis-ors, in obedience to the demand of public opinion, proposed to abolish imprisonment for debt, and to provide ample means in lieu thereof, for subjecting the debtor’s whole estate to execution, they undertook a work of very great difficulty; and it was naturally to be expected that there would, of necessity, be defects in their work which would require amendment. It is the business of the Regislature to amend these defects as they are devolved by time and experience. It is a significant fact, however, that though this great change in the law was made in 1849, and has since been the subject of such violent attack and of so much discussion, it has not yet been amended by the Regislature in any material respect.
Upon the whole, I am of opinion to affirm the decree of the Circuit Court.
The other judges concurred in the opinion of Moncure, P.
Decree affirmed.